UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTEN JACQUES, ET AL.,

          Plaintiffs,

v.                         Case No.  8:16-cv-1297-T-33TGW

SHERYL JACQUES,

          Defendant.

_____/

### ORDER

This cause comes before the Court pursuant to Prudential's Supplemental Motion for Clarification (Doc. # 24), which was filed on July 2016; Sheryl Jacques' Motion for Leave to File Amended Complaint (Doc. # 34), which was filed on August 17, 2016; Sheryl Jacques' Second Motion for Attorney's Fees (Doc. # 61), which was filed on October 9, 2016; and Kara Jacques, Kristen Jacques, and the Estate of John Jacques' Motion to Change Venue (Doc. # 63). The Motions are ripe for the Court's review.

After due consideration and for the reasons set forth below, Prudential's Supplemental Motion for Clarification is granted; Sheryl Jacques' Motion to Amend is granted in part and denied in part; Sheryl Jacques' Second Motion for Attorney's Fees is denied; and Kara Jacques, Kristen Jacques, and the Estate of John Jacques' Motion to Change Venue is denied.

I.    **Factual and Procedural Overview**

   A.    **Initial Complaint and Removal**

   Sheryl Jacques filed an ERISA lawsuit against Prudential in state court on April 25, 2015. (Doc. # 2).[1]  In her Complaint, Sheryl alleges that she was married to John Jacques from March 11, 2007, until June 6, 2013, "but continuously remained a domestic partner of John W. Jacques until his death on October 12, 2015." (Id. at ¶ 5).  Sheryl claims that on May 20, 2008, while she was still married to John, she "was designated by John W. Jacques as the primary beneficiary of the [Prudential Life Insurance] policy, and he never changed this designation." (Id. at ¶ 6).  Sheryl made a claim to the insurance proceeds, but Prudential did not pay it. (Id. at ¶ 8).  Sheryl demands payment of the Life Insurance proceeds along with costs and attorney's fees.

   After being served with the Complaint on May 4, 2016, Prudential timely removed the action to this court on May 24, 2016, predicating subject matter jurisdiction on the presentation of a federal question. (Doc. # 1).  In the Notice of Removal, Prudential also explains that the requirements of complete diversity are satisfied because Sheryl is a citizen of

---

[1] Because many parties in this suit share the same last name, the Court will sometimes refer to parties by their first names.

Florida, Prudential is a citizen of New Jersey, and the "Insured was covered for $85,000 in term life insurance benefits." (<u>Id.</u> at ¶¶ 9, 13).

On May 31, 2016, Prudential filed its Answer, as well as its Counterclaim and Third-Party Complaint for Interpleader. (Doc. # 6). Prudential named Kristen Jacques and Kara Jacques as Third Party Defendants under the theory that Kristen and Kara – the decedent's adult children – are "putative beneficiar[ies] of the life insurance proceeds at issue in this action." (<u>Id.</u> at 5). Prudential identifies itself as a neutral stakeholder and requests that the Court dismiss it as a party, with prejudice, and allow it to interplead the $85,000 "Death Benefit," with the Court making the ultimate determination of entitlement to the proceeds. (<u>Id.</u> at 6). Prudential explains that the decedent submitted his "First Beneficiary Designation Form" on March 17, 2004, designating Kristen and Kara as primary beneficiaries, with each entitled to 50% of the Death Benefit. (<u>Id.</u> at 7). But, on May 20, 2008, the decedent submitted the "Second Beneficiary Designation Form" designating Sheryl as a primary beneficiary entitled to 100% of the Death Benefit. (<u>Id.</u>). Prudential states that Sheryl, Kristen, and Kara have each made a claim to the Death Benefit. (<u>Id.</u>). Prudential maintains that it is ready, willing, and able to pay the Death Benefit, but "unable to make that determination without exposing itself to

double or multiple liability on account of the potential competing claims made by or available to defendants." (Id. at 8).

### B.   The Court Authorizes Interpleader

On June 17, 2016, Sheryl filed a Motion to Dismiss Prudential's Counterclaim and Third Party Complaint (Doc. # 11). Sheryl theorized that she "is the only person to whom Prudential is liable, thus interpleader is not available to Prudential." (Id. at 1).   In her Motion to Dismiss, Sheryl raised the prospect of the existence of another insurance policy, but at that time, the existence of such policy had not been confirmed by Prudential. (Id. at n.1).  Prudential responded to the Motion to Dismiss on June 30, 2016. (Doc. # 14). Therein, Prudential explained that interpleader was an appropriate vehicle for the disposition of the action because "Prudential does not dispute that the Insured had a valid life insurance policy or that it is liable for payment of the full amount of benefits under the Group Policy, plus any interest accrued, either to Sheryl or to Kristen and Kara." (Id. at 5).

As to the existence of a second insurance policy in the amount of $119,000, Prudential stated: "In the Motion to Dismiss, Plaintiff makes numerous factual allegations that fall well outside of the pleadings and are without evidentiary

support.   For example, in footnotes 1 and 3 she references a
'belief' that there was more than one policy issued to the
Insured and that the total death benefits of all policies
exceeds the amount of death benefits as alleged by Prudential.
Prudential has no information in its files relevant to these
allegations and at this time is unaware of any additional
policies and/or benefits." (Id. at n.2).

Based on Prudential's representations, the Court issued an
Order on July 12, 2016, denying Sheryl's Motion to Dismiss and
specifically allowing Prudential to interplead the $85,000 Death
Benefit into the Registry of the Court.  (Doc. # 18).  The Court
specified that after Prudential deposited the $85,000,
Prudential would be dismissed from the action and entitled to
its attorney's fees and costs.  (Id. at 11).  The Court also
scheduled a case management hearing to move the case forward
toward its final resolution. (Id.).

### C. The Second Policy is Discovered

On July 21, 2016, Sheryl filed a Motion for Reconsideration
containing proof that the decedent was in fact covered by two
relevant life insurance policies – the $85,000 policy referenced
in the initial Complaint, as well as a second policy in the
amount of $119,000 as previously suspected by Sheryl. (Doc. #
23).  On the same day, July 21, 2016, Prudential filed its own

-5-

Motion for Clarification "to ensure that Prudential is protected from double or multiple liability going forward and the claimants are precluded from asserting any further claims against Prudential regarding the Group Policy and/or the Death Benefit payable thereunder." (Doc. # 24 at 3). Sheryl thereafter filed a Supplemental Motion for Reconsideration together with her Response to Prudential's Motion for Clarification, as well as a request for attorney's fees. (Doc. # 25). In her submission, Sheryl asserted: "At no time prior to filing suit did Prudential inform the Plaintiff that there were two policies under a single claim number, and Prudential having decided to file an interpleader action on only one of the two policies is nothing less than fraud on the court and fraud on the Plaintiff." (Id. at 1).

On August 9, 2016, Kara and Kristen filed their "Answer to Third-Party Complaint, Affirmative Defenses, and Cross Claim by Kara Jacques and Kristen Jacques, and Third-Party Complaint by the Estate of John Jacques against Plaintiff Sheryl Jacques and Jury Demand." (Doc. # 30). Kara, Kristen, and the Estate alleged that the 2008 form in which the decedent purported to name Sheryl as the primary beneficiary was "forged, coerced and/or otherwise not valid." (Id. at 7). Kara, Kristen, and the Estate claim that Sheryl is precluded from receiving life insurance benefits under a divorce decree entered by a Michigan

-6-

state court, and that "Sheryl physically, mentally, emotionally, and financially, abused [the decedent] on a regular basis, while [the decedent] was paralyzed, and wheelchair bound." (Id. at 8).

On August 17, 2016, Sheryl filed a Motion for Leave to Amend her Complaint to assert her claim as to both insurance polices and to bring a fraud claim against Prudential. (Doc. # 34). The Court held a Case Management Hearing and Motions Hearing on September 13, 2016. (Doc. # 50). At that time, the Court was able to resolve some of the pending Motions, but was hindered by the fact that counsel for Prudential could not confirm the amounts of the life insurance policies. The Court entered an Order granting Sheryl's Motions for Reconsideration (Doc. ## 23, 25) "to the extent that the Court directs that the proceeds for both insurance policies be deposited into the Court's registry once the amounts of each policy are accurately determined." (Doc. # 48). The Court directed Prudential to file a Notice clarifying the amounts for each insurance policy by October 13, 2016.

After the hearing but before the filing of the Notice regarding the amounts of the policies, the parties filed a flurry of Motions, including Sheryl's Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees pursuant to 28 U.S.C. § 1927 for vexatiously multiplying the proceedings (Doc. # 60), Sheryl's Second Motion for Attorney's Fees (Doc. # 61) and Kara,

Kristen, and the Estate's Motion to Transfer the case to Michigan. (Doc. # 63).  On October 13, 2016, Prudential filed its Notice regarding the amounts of the relevant polices, explaining, inter alia: "Prudential has confirmed with ADP and the policy documents that the death benefit amount for the Basic Term Life Policy is the amount of $85,000." (Doc. # 66 at 3). Prudential also "confirmed with Mercer that the death benefit amount for the GUL Policy is the amount of $119,041.35." (Id.). In this Order, the Court will address Kara, Kristen, and the Estate's motion to transfer the case to Michigan, Prudential's request for clarification, Sheryl's motion for leave to file an Amended Complaint, and Sheryl's second motion for attorney's fees. Any other motions will be decided via separate Order.

## II. Motion to Change Venue

### A. Legal Standard

Kara, Kristen, and the Estate seek an Order transferring this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. See 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to

individualized, case-by-case consideration of convenience and fairness." <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988).

When considering a motion to transfer venue, the following factors are to be considered:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

<u>Kelling v. Hartford Life & Accident Ins. Co.</u>, 961 F. Supp. 2d 1216, 1218 (M.D. Fla. 2013)(quoting <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

**B.   <u>Venue Analysis</u>**

The first prong of the analysis is to determine whether this action could have been brought in the U.S. District Court for the Eastern District of Michigan.  None of the parties have discussed this threshold consideration.  Kara, Kristen, and the Estate, as the movants, have accordingly failed to carry their burden to establish that it is proper to transfer venue to the Eastern District of Michigan.  Nevertheless, the Court will evaluate the applicable Section 1404(a) factors to further

demonstrate why it is appropriate for this Court to retain the action.

### 1.    <u>Sheryl's Choice of Forum</u>

In determining the merits of the request that this case be transferred to Michigan pursuant to Section 1404(a), this Court employs a "strong presumption against disturbing [Sheryl's] initial forum choice." <u>SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.</u>, 382 F.3d 1097, 1100 (11th Cir. 2004). Specifically, "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." <u>Robinson v. Giamarco & Bill, P.C.</u>, 74 F.3d 253, 260 (11th Cir. 1996)(internal citations omitted). In <u>Sterling v. Provident Life and Accident Insurance Co.</u>, 519 F. Supp. 2d 1195, 1204 (M.D. Fla. 2007), the court determined, "In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show the balance of the conveniences is strongly in favor of the transfer." <u>Id.</u>  Sheryl initiated this action in Florida, and, although the movants demonstrate that some considerations militate in favor of a transfer, the movants have not shown that Sheryl's chosen forum should be disturbed.

### 2.    <u>Balance of the Conveniences and Sources of Proof</u>

"Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or

inconvenient." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 645-46 (1964). "Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." <u>Eye Care Int'l, Inc. v. Underhill</u>, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000).

Here, Sheryl resides in Florida, Kara resides in Texas, and Kristen resides in Michigan.  Shifting the inconveniences from Kristen to Sheryl is not a proper basis for a transfer of the case from Florida to Michigan.  Kara, Kristen, and the Estate likewise contend that "virtually all salient evidence and keepers of such evidence are found in Michigan . . . and the underlying divorce action, as well as the probate of the Estate of John Jacques, were/are all in Michigan." (Doc. # 63 at 2-3).

Kara, Kristen, and the Estate attach a list of "Michigan Witnesses" to their Motion to Transfer, but do not provide addresses for these witnesses nor any explanation for why it would be inconvenient for the witnesses to litigate in Florida. <u>See</u> <u>Connectus, LLC v. Ampush Media, Inc.</u>, No. 8:15-cv-2778-T-33JSS, 2016 U.S. Dist. LEXIS 23803, at *8 (M.D. Fla. Feb. 26, 2016)(denying motion to transfer venue when the movant did "not identify any particular witness that would be inconvenienced by litigating this matter in the Middle District of Florida."); <u>Kelling</u>, 961 F. Supp. 2d at 1218(denying motion to transfer

venue to Wisconsin even though the individual petitioning the court for relief under an ERISA plan resided in Wisconsin).

In addition, even if physical documents are located in Michigan, this factor is neutral due to the conveniences of modern technology, which allow for immediate access to documents and digital information. See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010)("technological advancements in electronic document imaging and retrieval minimize the burden of document production.").

### 3.  Locus of Operative Facts and the Governing Law

The movants have demonstrated that the locus of operative facts is Michigan.  According to the movants: (1) the life insurance contracts were entered into in Michigan; (2) John had his primary residence in Michigan; (3) John and Sheryl were divorced in Michigan; (4) John died in Michigan; and (5) the underlying divorce action, as well as the probate Estate of John were/are all in Michigan. (Doc. # 63 at 2-3).  This factor weighs in favor of a transfer to Michigan, but is not dispositive of the issue.

The movants also suggest that Michigan law will govern at least some of this case.  This factor tips the balance slightly in favor of a transfer to Michigan, because a federal court

sitting in Michigan is likely in a better position to apply the law of Michigan than a Florida court.  However, this Court is able to understand, interpret, and apply Michigan law. "[T]his Court is competent to apply foreign law, and does so." <u>Sterling</u>, 519 F. Supp. 2d at 1208.

### 4.   <u>Factors not Addressed by Movants</u>

The movants have not addressed a number of the Eleventh Circuit's factors, including the issue of the availability of compulsory process for witnesses who are unwilling to testify,[2] the relative means of the parties, and trial efficiency.  Due to the movants' failure to carry their burden, the Court denies the Motion to Transfer.

### III. <u>Motion to Amend to Include Fraud Count</u>

With the amounts of both policies having been confirmed, and having considered oral argument on the Motion to Amend at the September 13, 2016, hearing, the Court grants the Motion to Amend in part.  Sheryl is permitted to Amend her Complaint to contain a full discussion of both insurance policies. However, Sheryl's Motion is denied to the extent she seeks to include fraud claims against Prudential.

"The grant or denial of an opportunity to amend is within the discretion of the district court." <u>Foman v. Davis</u>, 371 U.S.

---

[2] Movants have not pointed to any witnesses who are unwilling or unable to testify.

178, 182 (1962).   The <u>Foman</u> decision enumerates the following factors that a district judge may use to deny leave to amend: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment.   <u>Id.</u>   The Court denies Sheryl's request for leave to amend as to the fraud claims on the basis of futility of amendment.

In response to the Motion to Amend, Prudential has provided a helpful explanation distinguishing the $85,000 policy and the later discovered $119,000 policy.   The $85,000 policy is a "Basic Term Life Policy" and Sheryl is the most recently designated beneficiary, with a 2008 beneficiary designation form on file with Prudential naming her the primary beneficiary.   The $85,000 Basic Term Life Policy is an employer sponsored benefit plan that is governed by ERISA.

As to the $119,000 policy, Prudential explains that it "issued a separate group life insurance policy to Wilmington Trust for the benefit of ADP employees under policy number UG-96692-DE (the 'GUL Policy').   The GUL Policy provides group universal life insurance coverage to eligible employees of ADP. The GUL Policy is not employer sponsored and is not subject to ERISA." (Doc. # 41 at 3).

Important to the determination of whether Prudential may be sued for fraud, "Prudential does not serve as the claims administrator for the GUL Policy.  The GUL Policy is administered by Mercer Life Claims." (Id.).  And, "Because Prudential does not administer the GUL Policy, other than confirming that it issued the GUL Policy, it does not maintain any other information in its files regarding the GUL Policy, including information related to the employees covered under the policy, amounts of coverage and/or beneficiary information." (Id.).

Here, Mercer forwarded a claim to Prudential under the GUL Policy in February of 2016, but "due to an inadvertent mistake when this claim came into Prudential, it was incorrectly filed under the existing claim for the Basic Term Life Policy, instead of being opened as a new and separate claim." (Id. at 4).  There is no doubt that Prudential's record keeping error has resulted in some confusion in this case.  But, at this point, all confusion regarding the existence of the policies and the amounts of the policies has been clarified.

The Court understands that Sheryl may be frustrated by the delay in receiving accurate information regarding the relevant policies and by Prudential's initial failure to account for the GUL Policy in the amount of $119,000.  However, the short delay

that occurred here due to a filing error does not give rise to a fraud claim.

Prudential has both polices and is ready, willing, and able to turn all funds over for disbursement by the Court.  There is no indication that Prudential failed to inform Sheryl about the $119,000 policy in the hopes that Prudential could retain the funds or use the funds for its own use.  Sheryl's putative fraud claim does not and cannot meet the requirements of Rule 9(b), Fed. R. Civ. P.

As recently stated by the Eleventh Circuit: "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." <u>Dixon v. Allergan USA, Inc.</u>, 645 Fed. Appx. 930, 932 (11th Cir. 2016).

Sheryl's fraud claim is alleged in paragraphs 44 and 45 of her proposed Amended Complaint.  In paragraph 44, she alleges that "Prudential's failure to disclose material information" is "misleading and deceptive, thus fraud."  Paragraph 45 alleges that "Prudential by choosing to interplead one of at least two

policies, and allege it must do so due to competing claims, while paying benefits under another Policy to which at least the same competing claims apply, is fraud."

These allegations fall far short of Rule 9(b)'s particularity requirements. She does not identify who made the false statements (or omissions) nor does she state when these statements or omissions took place. In addition, she has not described what Prudential "obtained" due to the alleged fraud.

Sheryl may file an Amended Complaint by November 14, 2016. Sheryl is free to lay her claim to one or both of the relevant insurance policies if she believes that she is the lawful beneficiary. However, Sheryl is not granted leave to amend her Complaint to state any claims against Prudential.

## IV.   **Motions for Clarification and Attorney's Fees**

Prudential seeks clarification in the form of various assurances that it will not be subject to any further liability once it has deposited the relevant funds in the Court's Registry. (Doc. # 24).  Prudential's Motion for Clarification is granted. The Court orders Prudential to deposit the insurance proceeds from both the Basic Term Life Policy and the GUL Policy (as well as all accrued interest) into the Court's Registry. The Clerk shall deposit the funds into an interest bearing account.  Prudential's Motion for Clarification is also granted

to the extent that the Court orders that once Prudential has deposited all funds in question into the Court's Registry, it shall be dismissed from this action with prejudice.

Upon the deposit of the insurance proceeds for both the Basic Term Life Policy and the GUL Policy, Prudential and its present and former parents, subsidiaries and affiliated corporations, predecessors, successors and assigns and their respective officers, directors, agents, employees, representatives, attorneys, fiduciaries, and administrators shall be released and discharged from any and all liability to Sheryl Jacques, Kristen Jacques, Kara Jacques, and the Estate with respect to the Basic Term Life Policy and the GUL Policy.

In addition, once the deposit of the funds has been made, Sheryl Jacques, Kristen Jacques, Kara Jacques, the Estate, and/or any past, present or future persons, representatives or conservators on their behalf, are permanently enjoined from bringing any action or proceeding in any forum, or making any further actual or implied claims, demands, causes of action asserted or unasserted, liquidated or unliqudiated, against Prudential arising out of or in connection with the Basic Term Life Policy or the GUL Policy.

Previously, and before the case took an unexpected procedural detour, the Court suggested that Prudential may recover its attorney's fees and costs from the insurance

-18-

proceeds.   However, because Prudential's own record keeping error augmented the proceedings, the Court declines to award Prudential any attorney's fees in this action.  Prudential's "inadvertent" misfiling has caused an inconvenience to the parties, as well as the Court, and has protracted already complex proceedings.  Although the Court is not convinced that Prudential used best practices in handling this case, the Court does not find that Prudential acted vexatiously or in bad faith, such that an award of fees is warranted.  Accordingly, the Court denies Sheryl's request for attorney's fees pursuant to the "inherent power of the Court." (Doc. # 61 at 4).   The Court also denies Sheryl's request for attorney's fees pursuant to Florida Statute § 627.428.   That statute would not apply to an ERISA policy, but could apply to the GUL policy. Florida Statute § 627.428 provides:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
> (2) As to suits based on claims arising under life insurance policies or annuity contracts, no such attorney's fees shall be allowed if such suit was commenced prior to expiration of 60 days after proof of the claim was duly filed with the insurer.

(3) When so awarded, compensation or fees of the
attorney shall be included in the judgment or decree
rendered in the case.

Sheryl has not demonstrated that she is a prevailing party
with respect to the GUL policy, and has not discussed the
relevant requirements for an award under this statute.   In
addition, at this procedural juncture, it is not clear whether
the GUL Policy is governed by Florida law or, rather, by
Michigan law.   Sheryl's request for attorney's fees is
accordingly denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Kara, Kristen, and the Estate's Motion to Transfer Venue
(Doc. # 63) is **DENIED.**

(2)  Prudential's Supplemental Motion for Clarification (Doc. #
24) is **GRANTED.** Upon the deposit of the insurance proceeds
for both the Basic Term Life Policy and the GUL Policy,
Prudential and its present and former parents, subsidiaries
and affiliated corporations, predecessors, successors and
assigns and their respective officers, directors, agents,
employees, representatives, attorneys, fiduciaries, and
administrators shall be released and discharged from any
and all liability to Sheryl Jacques, Kristen Jacques, Kara
Jacques, and the Estate with respect to the Basic Term Life

Policy and the GUL Policy.  In addition, once the deposit of the funds has been made, Sheryl Jacques, Kristen Jacques, Kara Jacques, the Estate, and/or any past, present or future persons, representatives or conservators on their behalf, are permanently enjoined from bringing any action or proceeding in any forum, or making any further actual or implied claims, demands, causes of action asserted or unasserted, liquidated or unliqudiated, against Prudential arising out of or in connection with the Basic Term Life Policy or the GUL Policy.

(3)   Sheryl's Motion for Leave to File Amended Complaint (Doc. # 34) is **GRANTED IN PART AND DENIED IN PART.** Sheryl is authorized to file an Amended Complaint by November 14, 2016, but is not permitted to file suit against Prudential with respect to the Basic Term Life Policy or the GUL Policy.

(4)   Sheryl's Second Motion for Attorney's Fees (Doc. # 61) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>2nd</u> day of November, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

-21-