UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTEN JACQUES, KARA JACQUES,
and THE ESTATE OF JOHN JACQUES,

       Plaintiffs,

v.                             Case No.  8:16-cv-1297-T-33TGW

SHERYL JACQUES,

       Defendant.
_____/

SHERYL JACQUES,

       Counterclaim Plaintiff,

v.

KRISTEN JACQUES, KARA JACQUES,
and THE ESTATE OF JOHN JACQUES,

       Counterclaim Defendants.
_____/

**<u>ORDER</u>**

In this interpleader action, the ex-wife and the adult daughters of the decedent, John Jacques, claim to be the proper beneficiaries under two life insurance policies.  It is not disputed that the first policy – the Basic Term Life Policy – is governed by ERISA, and the benefit amount payable is $85,000.  There is a dispute regarding whether the second policy – the Group Universal Life Policy "GUL Policy" – is governed by ERISA.  The benefit amount payable under the GUL Policy is $119,041.35.  (Doc. # 66).

Sheryl Jacques, the decedent's ex-wife, initiated this action against Prudential, the insurer, in state court, making reference to the Basic Term Life Policy, only. Prudential removed the case and thereafter filed its Answer and Third Party Complaint for interpleader identifying Kristen and Kara Jacques, the decedent's adult daughters, as potential insurance beneficiaries. (Doc. # 6). Subsequent to removal, the GUL Policy was discovered, and the Court authorized Prudential to interplead the death benefits for both policies into the Court's registry. Prudential has been dismissed from the action.

Kristen, Kara, and the decedent's Estate have filed an Amended Complaint against Sheryl. (Doc. # 58).[1] On October 4, 2016, Sheryl filed a Motion to Dismiss with Prejudice, Motion to Strike, Motion for More Definite Statement, and Motion for Sanctions Pursuant to 28 U.S.C. § 1927. (Doc. # 60). Kristen, Kara, and the Estate filed a Response in Opposition to the Motion on October 18, 2016. (Doc. # 67). The Court grants the Motion in part as detailed below.

## I.    Background Information

Sheryl filed an ERISA lawsuit against Prudential in state court on April 25, 2015. (Doc. # 2). In that initial pleading,

---

[1] Because many parties in this suit share the same last name, the Court will sometimes refer to parties by their first names.

Sheryl alleged that she was married to John from March 11, 2007, until June 6, 2013, "but continuously remained a domestic partner of John W. Jacques until his death on October 12, 2015." (Id. at ¶ 5).  Sheryl claimed that on May 20, 2008, while she was still married to John, she was designated by John as the primary beneficiary of the Basic Term Life Policy issued by Prudential. (Id. at ¶ 6).  Sheryl made a claim to the Basic Term Life Policy proceeds, but Prudential did not pay Sheryl any monies. (Id. at ¶ 8).  Sheryl did not lay her claim to the GUL Policy at that time because she was not aware that the GUL Policy existed.

After being served with the Complaint on May 4, 2016, Prudential timely removed the action to this Court on May 24, 2016, predicating subject matter jurisdiction on the presentation of a federal question – the ERISA policy – and claiming in the alternative that the requirements of complete diversity of citizenship were satisfied. (Doc. # 1).

On May 31, 2016, Prudential filed its Answer, as well as its Counterclaim and Third-Party Complaint for Interpleader. (Doc. # 6).  Prudential named Kristen and Kara as Third Party Defendants under the theory that Kristen and Kara are "putative beneficiar[ies] of the life insurance proceeds at issue in this action." (Id. at 5). Prudential identified itself as a neutral stakeholder and requested that the Court dismiss it as a party,

with prejudice, and allow it to interplead the $85,000 "Death Benefit," with the Court making the ultimate determination of entitlement to the proceeds. (Id. at 6).

Thereafter, a second life insurance policy, the GUL Policy, in the amount of $119,041.35 was discovered by the parties. Prudential represented to the Court that the GUL Policy was not governed by ERISA, and this is the position that Kristen, Kara, and the Estate have taken.  Sheryl, however, maintains that the GUL Policy is governed by ERISA. (Doc. # 77 at 10).  Besides noting their disagreement regarding ERISA coverage, the parties have not briefed the Court regarding whether the GUL Policy is covered by ERISA, Florida law, or Michigan law.

As Prudential has no stake in this matter, the Court authorized interpleader and directed Prudential to deposit all life insurance proceeds into the Registry of the Court. (Doc. # 74). Prudential has been dismissed with prejudice. (Id.).

On September 20, 2016, Kristen, Kara, and the Estate filed their First Amended Complaint against Sheryl. (Doc. # 58). Kristen, Kara, and the Estate allege that John named Kristen and Kara as the beneficiaries of both the Basic Term Life Policy and the GUL Policy in 2004. (Id. at ¶¶ 11, 32).  Kristen, Kara, and the Estate agree with Sheryl that "a beneficiary designation form in favor of Sheryl, dated May 20, 2008, named Sheryl as the

primary beneficiary of the Basic [Term Life] Policy." (<u>Id.</u> at ¶ 11).

Kristen, Kara, and the Estate contend, however, that it was Sheryl who completed the 2008 form regarding the Basic Term Life Policy and that Sheryl forged John's signature on the 2008 form. (<u>Id.</u> at ¶ 12). In the alternative, Kristen, Kara, and the Estate contend that if it was John who signed the 2008 beneficiary designation form, he either lacked the capacity to understand what he was signing because he was on heavy narcotic medications or that Sheryl coerced him to sign the 2008 form through physical violence and abuse. (<u>Id.</u>). Kristen, Kara, and the Estate allege "Sheryl used undue influence and coerced and threatened [John] to get him to sign documents, through a pattern of hitting him (while [John] was in his wheelchair and unable to defend himself), belittling him, calling him names, shouting at him and threatening him." (<u>Id.</u> at ¶ 26).

Kristen, Kara, and the Estate claim that "Sheryl physically, mentally, emotionally and financially abused" John during "their dating relationship, marriage, and after the marriage ended." (<u>Id.</u> at ¶ 14). Sheryl and John's divorce was finalized on June 6, 2013, with a Judgment of Divorce entered in Michigan. (<u>Id.</u> at ¶ 16). The Judgment of Divorce addressed life insurance proceeds with the following statement: "all rights of either party in any policy or contract of life, endowment or

annuity insurance on the other, as beneficiary, be and is hereby extinguished unless specifically preserved by the terms of this Judgment of Divorce." (Doc. # 58-1 at 5). The Judgment of Divorce further stated: "each party is awarded any life insurance policy which they hold in their own individual name now or in the future as their sole and separate property free and clear of any claim thereto on the part of the other party." (Id. at 6).

Based on these allegations and others, Kristen, Kara, and the Estate bring seven counts against Sheryl, as follows: undue influence (count 1); fraud (count 2); unjust enrichment (count 3); breach of contract (count 4); tortious interference with inheritance/expectancy (count 5); declaratory relief (count 6); constructive trust/equitable lien (count 7). Sheryl seeks dismissal of these claims pursuant to Rule 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. She also requests a more definite statement of the claims under Rule 12(e) and an Order striking certain allegations pursuant to Rule 12(f). In addition, Sheryl requests that the Court impose sanctions under 28 U.S.C. § 1927 for vexatious multiplication of the proceedings.

## II.  **Analysis**

### A.  **Rule 12(b)(1)**

"[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). When the jurisdictional attack is factual, the Court may look outside the four corners of the complaint to determine if jurisdiction exists. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982). In a factual attack, the presumption of truthfulness afforded to a plaintiff under Rule 12(b)(6) does not attach. Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). Because the very power of the Court to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence outside the complaint. Eaton, 692 F.2d at 732.

Sheryl argues that the fundamental requirements for Article III standing are missing because one or more of the Plaintiffs, particularly, the Estate, lack standing to bring their claims.

Federal courts are courts of limited jurisdiction. The irreducible constitutional minimum of standing has three components. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not hypothetical or conjectural. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). Second, there must be a causal connection between the injury and the conduct complained of – that is, the injury has to be fairly traceable to the defendant's actions and not the result of some independent actor. Id. Third, it must be likely (as opposed to speculative) that the injury will be redressed by a favorable decision. Id.

Sheryl remarks: "No standing is pled for the Estate." (Doc. # 60 at 5). Sheryl also argues, "The pleading fails to establish a claim for damages for each plaintiff, and they have not suffered any damages, nor do they allege how one or all three are entitle[d] to obtain declaratory relief." (Id.).

The Court finds that Kristen, Kara, and the Estate each have standing to sue. There are two life insurance policies that are now payable. Kristen and Kara's position is that they are the proper beneficiaries as to both policies. If Kristen and Kara lack standing, then so does Sheryl, because she is making the same claim to the same policies. The Court also finds that the Estate is a proper party to this suit, with

-8-

standing.  Under Kristen, Kara, and the Estate's theory of the case, Sheryl has waived all claims to the life insurance policies in the divorce proceedings, and this Court should turn over all proceeds to the Estate. (Doc. # 58 at ¶ 59).  This Court is not yet able to make an determination as to the proper insurance beneficiaries, but it is able to ascertain the proper parties to the suit, with standing, and the Court so finds that Kristen, Kara, and the Estate have standing.  Sheryl's Rule 12(b)(1) motion to dismiss is accordingly denied.

**B.   Rule 12(f)**

Having decided the jurisdictional issue presented, the Court will now examine whether any portions of the Amended Complaint are due to be stricken under Rule 12(f), which provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of Rule 12(f) is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Slone v. Judd, No. 8:09-cv-1175-T-27TGW, 2009 U.S. Dist. LEXIS 123821, at *3 (M.D. Fla. Dec. 29, 2009). "A motion to strike is a drastic remedy, which is disfavored by the courts." Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002).  "[A] court will not exercise its discretion under the

rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Reyher v. Trans World Airlines, Inc., 881 F. Supp. 574, 576 (M.D. Fla. 1995). Further, when deciding a motion to strike, a court must accept the truthfulness of well-pleaded facts and "cannot consider matters beyond the pleadings." Carlson Corp./S.E. v. Sch. Bd. of Seminole Cty., Fla., 778 F. Supp. 518, 519 (M.D. Fla. 1991).

Here, Sheryl takes issue with paragraphs 12, 14, 15, 17, 21, 22, 23, 24, 25, 26, 27, 37, 39, 40, 42, and 43 of the First Amended Complaint (Doc. # 58). The questioned allegations are repeated below:

> 12. The 2008 form was filled out, upon information and belief, completely by Sheryl, and, upon information and belief, the signature purporting to be that of John Jacques, the Insured, was forged, coerced and/or otherwise not valid.
> . . . .
> 14. Throughout their dating relationship, marriage and after the marriage ended, Sheryl physically, mentally, emotionally and financially, abused the Insured on a regular basis, while the Insured was paralyzed, and wheelchair bound.
> 15. As a result of physical and mental abuse and family alienation by Sheryl, Mr. Jacques filed for Divorce.
> . . . .
> 17. Sheryl was not the natural object of the Insured's affections on or about May 20, 2008, due to her abuse toward the Insured.
> . . . .
> 21. That Sheryl coerced John Jacques into the marriage when she found out he was about to receive a

substantial monetary settlement for his personal injuries that resulted in paralysis.

22. That Sheryl then spent the settlement proceeds, in many instances, without his consent, and when the money ran out, she stopped helping with house chores or providing assistance to the deceased.

23. Sheryl was consistently threatening to the Insured both during and after their marriage and by 2013, Mr. Jacques had to borrow money in order to hire an attorney for a divorce from his abuser.

24. Upon information and belief, Sheryl forged or caused to be forged upon the 2008 form, the signature of the Insured.

25. In the alternative, if the Insured did sign the 2008 form, it was when John Jacques had altered mentation due to heavy narcotic pain medication use and he did not have the capacity to know what he was signing.

26. That further Sheryl used undue influence and coerced and threatened the Insured to get him to sign documents, through a pattern of hitting him (while the Insured was in his wheelchair and unable to defend himself), belittling him, calling him names, shouting at him and threatening him.

27. The Insured was paralyzed and tormented by Sheryl in May, 2008, prior thereto, and thereafter she continued to do so, and some of the abuse was recorded by the Insured prior to his death, because he feared for his safety.

. . . .

37. Sheryl's abuse of the Insured, including efforts to restrict contact with his relatives in addition to mental and physical abuse, also described above, was ongoing and severe in May of 2008 and thereafter until his death.

. . . .

39. The injuries that paralyzed the Insured left him in a weakened state, vulnerable to abuses, coercion and manipulation by Sheryl.

40. Sheryl took advantage of the Insured's weakened state to abuse, coerce and manipulate him by threats and otherwise into both marrying her and, upon information and belief, into signing, (if it is his signature), the 2008 form.

. . .

42. The Insured and Sheryl's relationship had only
existed for a short time before the insured was a
victim of Sheryl's abuse when the 2008 form was dated.
43. The foregoing facts and the pattern of abuse by
Sheryl show that undue influence was used in obtaining
the Insured's signature, (if indeed it proves to be
his signature).

(Doc. # 58).

The Court certainly understands why Sheryl seeks an Order

striking the preceding allegations.  The allegations, unproven

at this point, depict her as an abusive spouse that used violent

tactics to obtain a financial advantage.  While the allegations

are damaging, they are not scandalous, impertinent, or

immaterial.  "An allegation is immaterial if it has no value in

developing the issues of the case. An allegation is impertinent

if it is irrelevant to the issues and which are not properly in

issue between the parties. A matter is scandalous if it is both

grossly disgraceful (or defamatory) and irrelevant to the action

or defense." Blake v. Batmasian, No. 15-cv-81222, 2016 U.S.

Dist. LEXIS 82736, at *3-5 (S.D. Fla. June 10, 2016)(internal

citations omitted).

Kristen, Kara, and the Estate maintain several alternative

theories regarding the 2008 beneficiary designation for the

Basic Term Life Policy: (1) that Sheryl forged John's signature

on the 2008 form; (2) that Sheryl coerced John to change his

beneficiary election on the 2008 form through physical violence;

and (3) that if John designated Sheryl as the beneficiary on the

2008 form, he lacked the capacity to understand what he was doing because he was on narcotic pain medications.

The Court declines to strike the allegations at this juncture because they are relevant to Kristen, Kara, and the Estate's claims and theories of the case. For instance, paragraph 25 describes the decedent's health issues and the pain medications that may have affected his mental capacity. In addition, the Amended Complaint's paragraphs describing alleged physical and emotional abuse support the theory that Sheryl coerced John to sign the form in question. The allegations regarding John's vulnerable state, use of heavy narcotic pain medication, and Sheryl's alleged physical and mental abuse are relevant and material. These allegations are not disgraceful nor are they scandalous. "If there is any doubt as to whether under any contingency the matter may raise an issue, the motion [to strike] should be denied." Blake, 2016 U.S. Dist. LEXIS 82736, at *3. After due consideration, the Court denies the motion to strike.

C.  **Rule 12(b)(6)**

On a Rule 12(b)(6) motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this

Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").  However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).  In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Here, Sheryl seeks dismissal of each count of the Amended Complaint: undue influence (count 1); fraud (count 2); unjust enrichment (count 3); breach of contract (count 4); tortious interference with inheritance/expectancy (count 5); declaratory relief (count 6); constructive trust/equitable lien (count 7).

The Court is confronted with a situation where one life insurance policy - the Basic Term Life Policy is governed by ERISA and the second policy - the GUL Policy - may not be. Prudential advised the Court that the GUL Policy was not governed by ERISA.  Kristen, Kara, and the Estate suggest that the GUL Policy might be governed by Michigan law, but none of the parties point to any provision in that policy or make reference to any case law explaining why the GUL policy should be governed by Michigan law.  In both the Motion to Dismiss and the Response thereto, the parties cite to Florida law and Michigan law, without explaining why the former or the latter approach should be taken.  And, on November 14, 2016, Sheryl filed her Verified Counterclaim stating:

> Defendant acknowledges that Prudential contends that the GUL policy is not part of the ERISA plan, however, the analysis determining whether a policy is governed by ERISA in *Teytelbaum v. Unum Group*, 2010 U.S. Dist LEXIS 119895, 2010 WL 4689818 (M.D. Fla. 2010), and the GUL policy's requirement for ADP to pay the premium [Doc. # 38 at 72], negates the first factor in order for the policy not to be part of the ERISA plan.

(Doc. # 77 at 10).

After examining the Amended Complaint, the Court determines that repleader is required.  With respect to the Basic Term Life Policy, which is undisputedly an ERISA plan, any and all state law claims are preempted by ERISA. In the partially analogous case of Unum Life Insurance Company of America v. Burton, No.

8:05-cv-1423-T-23MAP, 2005 U.S. Dist. LEXIS 41153 (M.D. Fla. Nov. 29, 2005), the siblings of the decedent alleged that (1) the decedent named the siblings as the life insurance beneficiaries; (2) the decedent's wife mistreated the decedent; and (3) the decedent's wife forged a change of beneficiary form fraudulently naming herself as the life insurance beneficiary. The siblings sought relief against the wife for "interference with prospective economic advantage, want of execution, undue influence, and deceit." Id. at *1. The court dismissed the state law claims and explained:

> The counterclaim seeks relief under ERISA. See 29 U.S.C. § 1132(a). "A party's state law claim relates to an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." Garren v. John Hancock Mut. Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997). Indeed, "ERISA preemption is not a gateway but a barrier to state law causes of action, the effect of which is to completely displace state-based claims." Amos v. Blue Cross-Blue Shield of Alabama, 868 F.2d 430, 431 (11th Cir.), reh'g denied, 875 F.2d 874 (11th Cir.), cert. denied, 493 U.S. 855, . . . (1989). **That the counterclaim involves a dispute over a change of beneficiary form in no way defeats ERISA preemption.** See Liberty Life Assurance Company of Boston v. Kennedy, 228 F. Supp. 2d 1367 (N.D. Ga. 2002), aff'd, 358 F.3d 1295 (11th Cir. 2004); Aetna Life Insurance Co. v. Bayona, 223 F.3d 1030 (9th Cir. 2000).

Id. (emphasis added).

To the extent the state law claims of undue influence, fraud, unjust enrichment, breach of contract, tortious

interference with inheritance/expectancy, declaratory relief, and constructive trust/equitable lien are asserted with respect to the Basic Term Life Policy, they are dismissed as preempted by ERISA.  Kristen, Kara, and the Estate are authorized to file a Second Amended Complaint by **December 19, 2016.**  Any claims made to the Basic Term Life Policy are ERISA claims and should be asserted as such.

To the extent Kristen, Kara, and the Estate seek relief regarding the GUL Policy, they may assert state law claims, but should specify whether they are asserted pursuant to Florida law or Michigan law.  In addition, Kristen, Kara, and the Estate are directed to file a separate Memorandum in conjunction with the Second Amended Complaint, by **December 19, 2016**, addressing whether the GUL policy is governed by ERISA, Florida law, or Michigan law.  Sheryl is directed to respond to the Memorandum within 14 days thereafter.

### D.   Rule 12(e)

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  "A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a

simple denial, in good faith, without prejudice to itself." Ramirez v. FBI, No. 8:10-cv-1819-T23TBM, 2010 U.S. Dist. LEXIS 132271, at *4 (M.D. Fla. Dec. 14, 2010)(internal citation omitted).

"In considering such a motion, the Court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a short and plain statement of the claim will suffice." Betencourt v. Marine Cargo Mgmt., Inc., 930 F. Supp. 606, 608 (S.D. Fla. 1996). "A motion for more definite statement is not a substitute for discovery." Id. Such a motion is "intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." Aventura Cable Corp. v. Rifkin/Narragansett S. Fla. CATV Ltd. P'ship, 941 F. Supp. 1189, 1195 (S.D. Fla. 1996).

Here, Sheryl calls for a more definite statement of the First Amended Complaint based on the theory that the pleading is a shotgun pleading. The Court has already determined that it is appropriate to require Kristen, Kara, and the Estate to file a Second Amended Complaint. However, the Court takes the opportunity to instruct Kristen, Kara, and the Estate regarding the Eleventh Circuit's sound rejection of shotgun pleadings.

The Eleventh Circuit has "condemned the incorporation of preceding paragraphs where a complaint contains several counts, predecessors [i.e., predecessor counts], leading to a situation

where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1324 (11th Cir. 2015). Here, the Amended Complaint does exactly that. When presented with a shotgun complaint, "it is virtually impossible to know which allegations of fact are intended to support which claims for relief." <u>Anderson v. Dist. Bd. of Trs. of Ctr. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366 (11th Cir. 1996). A shotgun pleading is "calculated to confuse," <u>T.D.S. Inc. v. Shelby Mut. Ins. Co.</u>, 760 F.2d 1520 n.14 (11th Cir. 1985), and requires the reader to sift through a sea of facts to determine which are material to the particular claims asserted. <u>See Anderson</u>, 77 F.3d at 366-67. That confusion is compounded when, as in the present case, the pleader is asserting numerous counts.

The Court has authorized Kristen, Kara, and the Estate to file a Second Amended Complaint by **December 19, 2016**. In crafting the pleading, Kristen, Kara, and the Estate are strongly cautioned that they should precisely tailor the factual allegations that are relevant to each count and should not incorporate every preceding allegation into each count. The Rule 12(e) motion for a more definite statement is accordingly granted.

**E.   28 U.S.C. § 1927**

28 U.S.C. **§** 1927 addresses "counsel's liability for excessive costs" and states: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Eleventh Circuit has "consistently held that an attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2006). Although Sheryl calls for the imposition of sanctions on several occasions, her requests are generic and do not persuade the Court that Kara, Kristen, the Estate, or their counsel have engaged in vexatious conduct that has resulted in the multiplication of the proceedings. The motion for sanctions is thus denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Sheryl Jacques' Motion to Dismiss with Prejudice, Motion to Strike, Motion for More Definite Statement, and Motion for

Sanctions Pursuant to 28 U.S.C. § 1927 (Doc. # 60) is **GRANTED IN PART AND DENIED IN PART.**

(2)   Kristen, Kara, and the Estate are authorized to file a Second Amended Complaint by **December 19, 2016.**

(3)   Kristen, Kara, and the Estate are directed to file a separate Memorandum in conjunction with the Second Amended Complaint, by **December 19, 2016,** addressing whether the GUL policy is governed by ERISA, Florida law, or Michigan law. Sheryl is directed to respond to the Memorandum within 14 days thereafter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u> day of December, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE