```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

KRISTEN JACQUES, KARA JACQUES,
and THE ESTATE OF JOHN JACQUES,

         Plaintiffs,
v.                                    Case No.  8:16-cv-1297-T-33TGW

SHERYL JACQUES,

         Defendant.
_____/

SHERYL JACQUES,

         Counterclaim Plaintiff,
v.

KRISTEN JACQUES, KARA JACQUES,
and THE ESTATE OF JOHN JACQUES,

         Counterclaim Defendants.
_____/
```

**ORDER**

This cause comes before the Court pursuant to Sheryl Jacques' Motion for Prejudgment Interest (Doc. # 86), which was filed on December 21, 2016. As stated in the Motion, Kara Jacques and Kristen Jacques join in the request for prejudgment interest. At the direction of the Court, Prudential Insurance Company of America filed a Response in Opposition on January 10, 2017. (Doc. # 92). For the reasons that follow, the Court denies the Motion.[1]

_____

[1] Because many parties in this suit share the same last (continued...)

I.  **Background**

When John Jacques passed away on October 12, 2015, he was covered by two life insurance policies issued by Prudential. On April 25, 2016, John's ex-wife, Sheryl, filed an ERISA complaint against Prudential in state court seeking payment of life insurance benefits under one of the two insurance policies - the Basic Term Life Policy. (Doc. # 2). On May 24, 2016, Prudential removed the action to this Court based on a federal question - the ERISA life insurance policy - and, in the alternative, diversity jurisdiction. (Doc. # 1).

Prudential demonstrated that interpleader relief was appropriate by indicating it was a neutral stakeholder, ready, willing, and able to disburse insurance proceeds, but not certain as to the identity of the appropriate beneficiary or beneficiaries and possibly subject to duplicate liability due to said uncertainty. Prudential identified John's adult children, Kristen and Kara, as putative insurance beneficiaries, and after some investigation, verified that a second life insurance policy, the Group Universal Life Policy (the GUL Policy), also covered John. The parties represent

---

[1](...continued)
name, the Court will sometimes refer to parties by their first names.

that the Basic Term Life Policy is an ERISA policy and that the GUL Policy is a non-ERISA policy.

At the Court's direction, Prudential deposited the proceeds of the Basic Term Life Policy ($85,000) and the GUL Policy ($119,041.35) into the Court's registry. (Doc. ## 75, 76). In an Order dated November 2, 2016, the Court granted a broad release to Prudential:

> [O]nce Prudential has deposited all funds in question into the Court's Registry, it shall be dismissed from this action with prejudice. Upon the deposit of the insurance proceeds for both the Basic Term Life Policy and the GUL Policy, Prudential and its present and former parents, subsidiaries and affiliated corporations, predecessors, successors and assigns and their respective officers, directors, agents, employees, representatives, attorneys, fiduciaries, and administrators **shall be released and discharged from any and all liability to Sheryl Jacques, Kristen Jacques, Kara Jacques, and the Estate with respect to the Basic Term Life Policy and the GUL Policy.**
> **In addition, once the deposit of the funds has been made, Sheryl Jacques, Kristen Jacques, Kara Jacques, the Estate, and/or any past, present or future persons, representatives or conservators on their behalf, are permanently enjoined from bringing any action or proceeding in any forum, or making any further actual or implied claims, demands, causes of action asserted or unasserted, liquidated or unliquidated, against Prudential arising out of or in connection with the Basic Term Life Policy or the GUL Policy.**

(Doc. # 74 at 18)(emphasis added).

On December 19, 2016, the Court was notified that Sheryl, Kara, and Kristen reached a settlement regarding the distribution of all life insurance proceeds. (Doc. # 83). The Court directed the parties to file a stipulation "includ[ing] direction regarding disbursement of the funds held in the Court's registry." (Id.).

Before providing the Court with any information about the parties' agreement as to distribution of the insurance proceeds, Sheryl filed the instant Motion seeking prejudgment interest from October 12, 2015, the date of John's death, until November 10, 2016, the date that Prudential deposited the funds in the Court's registry. (Doc. # 86). In total, Sheryl seeks $10,586.03 in prejudgment interest. Prudential opposes the Motion. (Doc. # 92).

**II. <u>Analysis</u>**

Prudential only "pays interest on life insurance death benefits where the applicable contract provides for the payment of interest and/or the applicable state statute requires that claim interest be paid." (Id. at 2). Sheryl, Kristen, and Kara have not pointed to any language in either of the two insurance policies which can be construed as allowing for the payment of prejudgment interest. And, Prudential affirmatively represents that "none of the terms of

-4-

either policy provide for the payment of interest on the death benefits." (Id. at 2-3).

Tellingly, in Flint v. ABB Inc., 337 F.3d 1326, 1329 (11th Cir. 2003), the court explained:

> The Supreme Court has observed repeatedly that ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system. The Court has emphasized its unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.

Id. (internal citations and quotation marks omitted). In Flint, the court evaluated the terms of a disability plan, rather than a life insurance policy. Nevertheless, that court held that accrued interest was not recoverable by an ERISA participant whose benefits were prematurely terminated and later reinstated, because the ERISA plan's provision did not mandate such a recovery. Although not exactly on point, the Court is persuaded by the analysis in Flint. The Court declines to insert remedies into an ERISA policy that were not previously agreed to by the contracting parties.

Because funds from a non-ERISA insurance policy are also at issue, the Court evaluates whether any Florida statute would provide for the payment of prejudgment interest. Sheryl

argues: "Florida Statute § 55.03 establishes the statutory interest rate for all matters which do not have specific statutes for interest. Based upon this statute, which provided a rate of 4.75% up to March 31, 2016, then 4.78% from April 1, 2016, to June 30, 2016, and then 4.84% since July 1, 2016, prejudgment interest on $204,041.35 for which Prudential is liable is calculated [as] . . . $10,586.03." (Doc. # 86 at 4).

Prudential counters that § 627.4615, Fla. Stat. is "the sole Florida statute requiring the payment of interest on life insurance policies" and that it "applies only to individual life insurance policies." (Doc. # 92 at 3). Prudential remarks, "there is no similar statute requiring the payment of interest on group policies [such as the GUL Policy] in Florida." (Id.). The Florida Statute that Sheryl relies upon states, "Any judgment for money damages or for a judicial sale and any process or writ directed to a sheriff for execution shall bear, on its face, the rate of interest that is payable on the judgment. The rate of interest stated in the judgment, as adjusted in subsection (3), accrues on the judgment until it is paid." Fla. Stat. § 55.03(2).

In Rainess v. Estate of Machida, 81 So. 3d 504, 512 (Fla. 3d DCA 2012), the court explained that prejudgment interest

-6-

should not be included in interpleader actions. In <u>Rainess</u>, the ownership of the decedent's $1.5 million IRA was contested by a decedent's widow and nephew because the bank lost the decedent's IRA paperwork. <u>Id.</u> at 507. The trial court divided the IRA among the widow and the nephew and denied a motion for prejudgment interest. <u>Id.</u> at 509. The trial court's denial of prejudgment interest was affirmed because:

> Florida has adopted the position that prejudgment interest is an element of pecuniary damages. <u>Argonaut Ins. Co. v. May Plumbing Co.</u>, 474 So. 2d 212, 215 (Fla. 1985). A plaintiff is entitled to prejudgment interest as a matter of law when he prevails on a claim and a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses. . . . While the trial court determined Rainess to be a co-equal beneficiary of [the] IRA, that determination did not constitute an award of damages, as interpleader is not an action for damages. Rather, it has been established that . . . interpleader remains an equitable remedy governed by equitable principles. Thus, the trial court did not err in denying Rainess' claim for prejudgment interest.

<u>Id.</u> (internal citations and quotation marks omitted).

In <u>Rainess</u>, the trial court made the determination regarding distribution of the disputed proceeds whereas here, the parties reached a settlement regarding the distribution of the proceeds. Under either scenario, the payment of prejudgment interest is not required under Florida law because

-7-

this is an interpleader action and Sheryl has suffered no "out of pocket" damages.

Sheryl points out that in <u>National Companies Health Benefit Plan v. St. Joseph's Hospital, Inc.</u>, 929 F.2d 1558 (11th Cir. 1991), the court affirmed the trial court's award of 18% prejudgment interest in the context of an ERISA dispute. That case, however, can be easily distinguished and cannot be used to support an award of prejudgment interest here. In <u>National Companies</u>, both husband and wife were independently covered by a health insurance plan, but when their twin babies were born prematurely and with medical complications, both insurance companies declined to make appropriate payments and disclaimed coverage. The family was left scrambling to pay "substantial unpaid medical expenses" with the hospital demanding payment plus 18% interest. <u>Id.</u> at 1574, 1576. That case was decided in favor of the insured family under ERISA, and the court made a specific finding of bad faith on the part of the husband's insurance company: "National represented to Mr. Hersh that it would provide continuation coverage to him and then, after Mr. Hersh had detrimentally relied upon this representation, National changed its mind and tried to avoid its obligation." <u>Id.</u> at 1575. The court recognized that the award in favor of the

-8-

Hersh family, over $1 million, which included prejudgment interest, was entered in part to deter insurance companies from "forc[ing] underfinanced beneficiaries to sue them to gain their benefits or accept undervalued settlements." Id.

In contrast, after both insurance policies were identified and the death benefit amounts confirmed, Prudential timely paid all monies into this Court's registry under the equitable doctrine of interpleader. Prudential did not attempt to deny or disclaim coverage as did the insurers in National Companies.

Finally, Sheryl argues that although the life insurance policies do not contain a provision requiring the payment of prejudgment interest, prejudgment interest may be awarded pursuant to this Court's discretionary authority. However, Sheryl has not convinced the Court that such an award is appropriate. Notably, in authorizing interpleader, the Court held that Prudential would be forever discharged with respect to claims brought by Sheryl, Kristen, and Kara as to the two relevant life insurance policies insuring John. It would take compelling circumstances, akin to fraud or similar malfeasance – which are not present here - for the Court to retract from the broad release it granted to Prudential when interpleader

was authorized. Thus, after due consideration, the Court denies the Motion.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Sheryl Jacques' Motion for Prejudgment Interest (Doc. # 86) is **DENIED.**

(2) Sheryl, Kara, and Kristen Jacques are directed to file a stipulation regarding the distribution of the funds held in the Court's registry without delay.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of February, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

-10-